46 C.C.P.A. (Patents)

**Charles J. STALEGO and Wendell W. Drummond, Appellants,**

v.

**Pierre Rene HEYMES and Ivan Peyches, Appellees.**

**Patent Appeal No. 6390.**

United States Court of Customs and Patent Appeals.

Feb. 5, 1959.

Henry K. Leonard, Toledo, Ohio (Carl F. Schaffer, Toledo Ohio, and William T. Estabrook, Washington, D. C., of counsel), for appellants.

Bauer & Seymour and Dale A. Bauer, New York City (John L. Seymour, New York City, of counsel), for appellees.

Before O'CONNELL, Acting Chief Judge, and WORLEY, RICH, and MARTIN, Judges.

WORLEY, Judge.

This appeal is from the decision of the Board of Patent Interferences of the United States Patent Office awarding priority of invention of the subject matter in issue in Interference No. 86,-888 to the senior party, Pierre Rene Heymes and Ivan Peyches, appellees here. Involved is an application by Heymes and Peyches, hereafter referred to as Heymes et al., filed September 3, 1953, for reissue of their patent No. 2,624,912 granted January 13, 1953, on an application filed May 26, 1947; and a patent, No. 2,603,-883, granted to Charles J. Stalego and Wendell W. Drummond, hereafter referred to as Stalego et al., on July 22, 1952, on an application filed July 30, 1948.

Stalego et al., in their preliminary statement, alleged no date of invention as early as May 26, 1947, the filing date of the original Heymes et al. application and were accordingly ordered to show cause why judgment should not be entered against them. In response, they moved to dissolve the interference on the ground, inter alia, that Heymes et al. had failed to comply with the requirements of 35 U.S.C. § 135 since they did not make the claims corresponding to the counts of the interference until more

than one year after issuance of the Stalego et al. patent, and since the Heymes et al. application did not, prior to one year from the date of such issuance, contain claims to substantially the same subject matter as the counts. That motion was denied by the Primary Examiner. His holding was affirmed, after final hearing, by the Board of Patent Interferences, both tribunals holding that Heymes et al. were continually claiming substantially the subject matter of the counts during the time specified by 35 U.S.C. § 135.

■ It is not contended that Heymes et al. presented the *actual* counts in issue until more than one year after the Stalego et al. patent issued, thus the sole question here is whether, within one year after such issuance, they were asserting claims "for the same or substantially the same subject matter as" the counts. That question is ancillary to priority and may properly be considered by this court in an interference proceeding. Jenks v. Knight, 90 F.2d 654, 24 C.C.P.A. 1227; and Rieser v. Williams, 255 F.2d 419, 45 C.C.P.A. 953.

The question as to what is meant by "substantially the same subject matter," as used in 35 U.S.C. § 135, and in prior court decisions on which that section is based, beginning with Chapman v. Beede, 296 F. 956, 54 App.D.C. 209, has been frequently considered by this court, and a number of decisions bearing on it are cited and discussed in Rieser v. Williams. Those decisions hold, in effect, that claims are not for substantially the same subject matter if one of them contains one or more material limitations which are not found in the other. Accordingly, the ultimate question to be decided in such cases is generally whether specific differences between claims are material; and that is a question which must be decided largely on the basis of the particular circumstances of each case.

The invention relates to a process of reducing glass to the form of fibers by melting, heating, and spraying it by centrifugal action into a rapidly moving stream of hot gas.

The interference consists of four counts, which originated as claims of the Stalego et al. patent. Count 1 is typical, and reads:

"1. The process of making fibers from a heat softenable material which comprises burning a combustible mixture of gases within a substantially closed chamber and discharging the burned gases generally outwardly and radially from the chamber in the form of a blast moving at a velocity sufficient to attenuate the heat softened material into fibers, heating a body of the material to softened state within said chamber, subjecting a body of said heat softened material to the action of centrifugal force to flow the heat softened material into the blast, and entraining the heat softened material in the blast whereby the material is carried from the chamber by the blast and is attenuated into fibers by the heat and force of the blast."

The Stalego et al. patent discloses several generally similar embodiments. In the one shown by Fig. 4, which was principally relied on by the board, there is provided a conical cup mounted for rotation on a vertical axis and having a serrated outer edge. Mounted above and coaxial with the cup is a cylindrical combustion chamber which is of slightly larger diameter than that of the top of the cup and which has an open bottom terminating substantially in the plane of such top so that the cup forms, in effect, the bottom of the combustion chamber. That arrangement leaves a restricted annular space around the serrated edge of the cup through which the heated gases escape from the combustion chamber at high velocity. The molten glass which is thrown from the rotating cup is attenuated by the gases to form fine fibers.

The other embodiments disclosed by Stalego et al. are generally similar to that just described except that in one of them the combustion chamber is integral with the cup and rotates therewith. In that

form the gases and molten glass escape through circumferential slots at the junction of the cup and combustion chamber.

The Heymes et al. patent discloses two separate embodiments. In the first, glass is supplied to a centrifuge comprising a cup which is rotated on a vertical axis and which is provided with an integral upwardly convexed cover. Openings are provided around the periphery where the cup joins the cover, and the glass is thrown through those openings by centrifugal force. The centrifuge is surrounded by a combustion chamber of a shape generally similar to that of the cup and cover, which is spaced from the cup and cover to provide upper and lower combustion spaces, and which has an annular opening surrounding the openings through which the glass is projected. Combustion gases are discharged through the annular opening and the glass, encountering these gases, is attenuated into fibers.

The second embodiment of Heymes et al. employs a centrifuge generally similar to that just described, but the combustion chamber is in the form of a hollow ring which discharges gases downwardly through an annular opening just above the openings in the centrifuge, so that the gases enter the path of the molten glass as it leaves the periphery of the centrifuge and break it up into fibers in a manner similar to that described above.

Claim 1 of the Heymes et al. patent, which also appears in the reissue application, is clearly the claim which most nearly resembles the counts of the interference and is the only one which need be considered in determining whether Heymes et al. have been continuously claiming the subject matter of those counts beginning at a time less than one year after the issuance of the Stalego et al. patent. That claim reads:

"The hereinbefore described method of attenuating and drawing thermoplastic fibers which comprises revolving a body provided with a plurality of openings supporting a source of molten material at sufficient speed to discharge the material by centrifugal force from said openings in fiber form, providing a housing located exteriorly of said body, establishing and maintaining combustible and comburent at high temperature and pressure within said housing, discharging the gaseous products of combustion from said housing to the atmosphere through an annular constricted throat surrounding closely the openings in the centrifuge thereby directing said gaseous products of combustion at high temperature and high velocity into the path of the fibers close to their point of discharge from the openings in the centrifuge and before any substantial loss of heat from the molten fibers to initiate and continue the attenuation and drawing of the fibers close to the discharge point of the latter from the centrifuge."

No question is raised here as to the readability of the counts on the disclosures of both parties, but much attention has been paid by the parties and by the tribunals below to the question whether the Heymes et al. claim is readable on the disclosure of the Stalego et al. patent. That question is not alone determinative of the issue before us since it is quite possible that the Heymes et al. patent claim might be for the same invention as the counts even though, because of some immaterial limitation, it was not literally readable on the Stalego et al. patent disclosure; conversely, the Heymes et al. claim, although fully readable on the patent disclosure, might be for an invention distinct from that set forth in the counts. It has been held, however, that cross-readability of the claims of applications and/or patents is a factor to be considered in determining whether they are directed to substantially the same invention. Thompson v. Hamilton, 152 F.2d 994, 33 C.C.P.A. 732; and In re Teague, 254 F.2d 145, 45 C.C.P.A. 877. Accordingly, we shall con-

sider whether claim 1 of the Heymes et al. patent is readable on the Stalego et al. patent.

The first step recited by that claim is revolving a body provided with openings and supporting molten material at a sufficient speed to discharge such material from the openings in fiber form. In the embodiment of the Stalego et al. invention shown by Fig. 4 of the patent, a cup or centrifuge containing molten glass is rotated at the speed required by the claim, and the glass is discharged in fiber form from notches in the rim of the cup. We are of the opinion those notches are "openings" within the meaning of Heymes et al. claim 1. The definitions of "opening" given in Webster's New International Dictionary, Second Edition, 1949, include a "gap" or "cleft," and the notches of Stalego et al. respond to those terms. There is nothing in the language of claim 1, or in the carrying out of the process defined thereby, which necessitates the use of holes or apertures as distinguished from notches. The function of dividing the molten material to form fibers is performed in substantially the same manner in either case.

The second step recited by Heymes et al. claim 1 is "providing a housing exteriorly of said body." Such a housing is provided in Fig. 4 of Stalego et al. by the open-bottomed combustion chamber located above the rotating body. The word "housing" is not limited to a structure which completely encloses something and, as was noted by the board, the patent to Slayter, No. 2,431,205, which is a reference of record in each of the interfering cases, applied the word "housing" to an open-bottomed combustion chamber which is generally similar to that of Fig. 4 of Stalego et al.

The third step of Heymes et al. claim 1, namely, "establishing and maintaining combustible and comburent at high temperature and pressure within said housing" is clearly disclosed by Stalego et al. The fourth step of discharging the products of combustion from the housing to the atmosphere through an annular con-

stricted throat surrounding closely the openings in the centrifuge is also disclosed in Fig. 4 of Stalego et al., the throat being the opening between the housing and the rotating body. It is urged by Stalego et al. that the "constricted throat" must be separate from and independent of the rotating body, but we find nothing in either the language or history of the claim justifying such an interpretation. It is true that Heymes et al. at one time asserted claims (25 and 26) which called for a throat having walls separate from and independent of the centrifuge, and argued that such a structure was not shown by the references relied on by the examiner, but that fact affords no basis for reading a similar limitation into the entirely different language of their process claim 1.

The foregoing are the only actual steps set forth in Heymes et al. claim 1. The remainder of the claim consists of a functional statement as to the interaction of the fibers and combustion gases, which is fully satisfied in the embodiment of Fig. 4 of Stalego et al.

We have carefully considered appellants' arguments, but are of the opinion that claim 1 of Heymes et al. is properly supported by the disclosure of the Stalego et al. patent.

While the fact that both Heymes et al. claim 1 and the interference counts are readable on the disclosures of both parties affords some indication that they are directed to substantially the same invention, it is necessary to compare the claims themselves in order to reach a proper conclusion on that question.

Comparing count 2 with claim 1 of Heymes et al. it will be found that, while the specific language and order in which the steps are recited vary, the following essential steps are set forth in each:

1. Burning a combustible mixture in a chamber

2. Rotating a body of molten material so that the material is thrown off by centrifugal force

3. Directing the combustion gases at high velocity and in an annular form

through a restricted outlet into the path of the molten material to attenuate it.

An examination of references of record and the arguments advanced by the parties in obtaining allowance of their respective claims clearly indicates that the common features listed above were the ones which were considered to be of vital importance.

In addition to the above features, Heymes et al. claim 1 contains the following limitations:

1. That the revolving body is "provided with a plurality of openings."

2. That the combustion chamber (housing) is "located exteriorly" of the body in which the molten material is rotated

3. That the annular restricted outlet through which the combustion gases pass is in the form of a throat closely surrounding the openings of the body.

We do not regard any of those limitations as important. Since the claim is not limited in any way as to the size, number, or arrangement of the plurality of openings, it is evident that there is no criticality in that feature. In the process as claimed, it is broadly immaterial whether the molten material escapes from the rotating body through a plurality of openings or in some other manner.

In light of the different embodiments disclosed by Heymes et al. as described above, the limitation in their claim 1 that the combustion chamber is "located exteriorly" of the rotating body must be construed broadly enough to include either an arrangement in which the chamber completely surrounds the body, or one in which it is merely adjacent to the rim of the body. Since it would appear that one or the other of those arrangements would be necessary in order to produce in any practical manner an annular blast acting on the molten material in the manner specified in both count 2 and Heymes et al. claim 1, the limitation as to exterior location of the combustion chamber cannot be regarded as a material one.

Similarly, the statement in Heymes et al. claim 1 that the annular restricted outlet through which the combustion gases pass is in the form of a throat closely surrounding and rotating body adds nothing of consequence to the claim, since such an arrangment would be a natural, if not a necessary one, to produce the interaction of the gases with the molten material which is required by those limitations which are common to count 2 and Heymes et al. claim 1. It is to be noted that, in view of the different embodiments disclosed by Heymes et al., the word "surrounding" may mean either that the openings in the rotating body lie within the throat, or that the throat is in the form of an annulus lying beyond and adjacent the openings.

It is, moreover, to be noted that the last three limitations are all directed to features of apparatus, hence are entitled to little weight in evaluating Heymes et al. claim 1 which, like count 2, is a method claim. It is well settled that patentability of method claims cannot be predicated on apparatus limitations. In re Freeman, 108 F.2d 244, 27 C.C.P.A. 795; and In re Sweeney, 159 F.2d 752, 34 C.C.P.A. 866.

Count 2 also contains three limitations in addition to those which it has in common with Heymes et al. claim 1. Those limitations are:

1. That the combustion chamber is "substantially closed"

2. That the restricted outlet through which the combustion gases are discharged is in a wall of the chamber

3. That the material is heated to molten state within the combustion chamber.

The first two of those limitations relate to apparatus features which are immaterial so far as the claimed process is concerned. So long as the gases are delivered at the proper point and in the proper manner it is of no consequence whether they were produced by combustion in a closed chamber, or whether the outlet through which they issue is in a wall of such a chamber. It may be noted, moreover, that, since the gases are to issue in the form of a high velocity blast, it would be obvious to employ a substantially closed-combustion chamber in

which pressure could be built up, and to employ an opening in the wall of that chamber to direct the gases to the desired point.

Whether the material is heated to molten condition in or out of the combustion chamber is obviously a matter of choice. Heymes et al. and Stalego et al. each discloses a process involving the melting of the material in the combustion chamber as well as one in which the material is melted elsewhere and supplied in liquid form, and each regards those processes as being generally equivalent.

■ For the reasons given, we are of the opinion that count 2 and Heymes et al. claim 1 are directed to substantially the same invention, since they relate to substantially identical processes designed to produce the same result and differ only in minor details which do not materially affect the results obtained. As was pointed out in the Rieser v. Williams opinion, the rule that every express limitation must be considered material, which is applied in determining the right of a party to make a count of an interference, is not applicable in determining whether claims are directed to substantially the same subject matter within the meaning of 35 U.S.C. § 135. In the latter situation it is necessary to distinguish between those limitations which relate to the essence of the claimed subject matter and those which do not.

Count 1 contains a limitation which is not found in count 2 to the effect that the combustion gases are discharged "generally outwardly and radially" from the combustion chamber, while counts 3 and 4 state that the gases are directed "radially." We do not regard those limitations as material, since the exact direction in which the gases move appears to be merely a matter of choice. Both parties show embodiments in which the gases move more or less at right angles to the path of the solid material, as well as embodiments in which the gases move radially.

■ It is to be noted that the earliest date alleged by Stalego et al., in their preliminary statement, for the performance of any inventive act in connection with the subject matter of the counts was January 8, 1949, which is subsequent to the filing date of May 26, 1947, of the application on which the Heymes et al. patent was issued, and that it is not disputed here that the said patent discloses the subject matter of the counts. Accordingly, an award of priority to Stalego et al. would be contrary to the dates of invention established by the record and would be based solely on a technicality in the nature of an estoppel. Such an award should not be made unless the circumstances clearly require it.

■ We agree with the examiner and the board that claim 1 of Heymes et al., which was continuously asserted by them, beginning at a time prior to the issuance of the Stalego et al. patent, is drawn to substantially the same subject matter as the counts of the interference, within the meaning of 35 U.S.C. § 135.

The decision of the Board of Patent Interferences is affirmed.

Affirmed.