Stephen D. Murphy, Garden City, N. Y., for appellant.

Richard R. Trexler, Chicago, Ill., for appellees.

**Herbert O. CORBETT, Appellant,**

v.

**Douglas S. CHISHOLM and Walter J. Schrenk, Appellees.**

Appeal No. 77–526.

United States Court of Customs and Patent Appeals.

Dec. 29, 1977.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and MORGAN FORD, Associate Judge, United States Customs Court.

RICH, Judge.

This appeal is from the June 30, 1976, decision of the Patent and Trademark Office (PTO) Board of Patent Interferences (board), adhered to on reconsideration, awarding priority to junior party-patentee Chisholm et al.[1] (Chisholm) on the ancillary ground that senior party-applicant Corbett's[2] claims to the subject matter in issue were barred by 35 U.S.C. § 135(b). We affirm.

*The Issue*

The interference counts correspond exactly to claims copied by Corbett from Chisholm's patent on March 26, 1973, some 26 months after Chisholm's patent issued. The statute, 35 U.S.C. § 135(b), provides:

(b) A claim which is the same as, or for the same or substantially the same subject matter as, a claim of an issued patent may not be made in any application *unless such a claim is made prior to one year from the date on which the patent was granted.* [Emphasis ours.]

The issue, therefore, is whether the board was correct in holding that Corbett was not

---

1. Chisholm et al. are involved on U.S. Patent No. 3,557,265 for "Method of Extruding Laminates," issued January 19, 1971, on application serial No. 694,470, filed December 29, 1967, as a continuation-in-part of serial No. 432,258, filed February 12, 1965.

2. Corbett is involved on application serial No. 654,941 for "Method of Extruding Laminated Film," filed May 26, 1967, as a division of serial No. 350,220 for "Laminated Products and Methods and Apparatus for Producing Same," filed March 9, 1964.

*claiming* subject matter substantially the same as that covered by the copied claims prior to January 19, 1972, i. e., within the year after Chisholm's patent issued.

### Background

The subject matter in issue is exemplified by count 1, corresponding exactly to Chisholm patent claim 1, which reads:

1. A method of preparing a sheet of thermoplastic resinous materials by extruding in an extrusion apparatus wherein the materials are arranged as a plurality of lamina having major surfaces generally parallel to the major surfaces of the resultant sheet, the steps of the method comprising

(a) providing by extruding in an extrusion apparatus a plurality of closely adjacent flowing streams of diverse thermoplastic materials in a heat plastified condition in contiguous relationship to each other, each stream having generally planar surfaces which are generally parallel,

(b) altering the cross-sectional configuration of the plurality of flowing streams by reducing the dimension of the stream in a direction generally perpendicular to interfaces between the individual streams, and

(c) increasing the dimension of the stream in a direction transverse to the direction of flow and generally parallel to the interface of the streams to form a sheet-like configuration having a plurality of layers wherein the layer interfaces are in generally parallel relationship to each other and to major surfaces of the sheet-like configuration.

Briefly described, the method comprises (a) forming a laminar stream, (b) reducing the thickness of the stream (squeezing), and (c) increasing the width of the stream (expanding). As can be seen from Chisholm's Figs. 1 and 4, the patentee contemplates reduction and expansion sufficiently severe to transpose the major and minor surfaces of a laminar stream, having layer interfaces parallel to plane 2–2 in Fig. 1, as it passes through a "transition piece" 17 illustrated in more detail in Fig. 4.

The Chisholm process is said to be particularly adapted to the formation of laminates having a relatively large number of layers of generally regular thickness.

The Corbett disclosure is identical to that discussed at length in *Squires v. Corbett,* Cust. & Pat.App., 560 F.2d 424, 194 USPQ 513 (1977). With the aid of annotated copies of Corbett application Figs. 1 and 2[3] attached to Corbett's Supplemental Opposition to Motion to Dissolve, the relationship between the Corbett disclosure and the Chisholm patent claim is readily apparent. Corbett discloses, inter alia, methods of making multiple-layer film wherein a stream from extruder 57 is split into two streams by diverter element 64. An intermediate third stream is introduced through orifice 66 in diverter 64 to form a laminar stream with layer interfaces in the planes indicated in Fig. 2. As the annotations suggest, Corbett's process, as illustrated, re-

---

**3.** Originally Figs. 3 and 4, respectively, renumbered during prosecution.

duces the thickness of (squeezes) the stream, although no such operation is expressly taught in the specification. As can be seen from Fig. 1, the Corbett process also laterally expands the film prior to extrusion, an operation described in detail in the specification as a significant object of the invention.

### The Claims

Corbett relies upon four distinct sets of claims to avoid the 35 U.S.C. § 135(b) bar. The first consists of claims 24–27, originally presented in Corbett's parent application, later made the subject of the divisional application at bar, consonant with a three-way restriction requirement in the parent. Claim 24 is illustrative and reads (emphasis ours):

24. The method of forming a laminated body comprising the steps of establishing the laminar flow of a first plasticized material, establishing the laminar flow of a second plasticized material, and joining said first and second plasticized materials under pressure, and thereafter *moving said joined materials with laminar flow in a divergent flow path toward an orifice opening* and extruding said joined materials through said opening.

While these claims were introduced into the involved Corbett application on May 26, 1967, during the pendency of the Chisholm application, they were cancelled on September 17, 1968, some 27 months before the Chisholm patent issued.

The second set of claims relied upon by Corbett are claims 64–69 copied from a

patent to Donald[4] into Corbett's involved application on August 18, 1969. Claim 64 is illustrative and reads (emphasis ours):

64. A method for the extrusion of a composite stream of heat-plastified synthetic resinous material in a sheet-like configuration wherein the composite stream comprises at least three layers of diverse synthetic resinous material, the method comprising:

providing a first stream of heat-plastified synthetic resinous material to a restraining configuration, the restraining configuration having a generally slot-like extrusion orifice,

dividing the first stream of heat-plastified synthetic resinous material into a first substream and a second substream having a generally planar configuration,

providing a second stream of heat-plastified synthetic resinous material, the second stream having a generally planar configuration and a width substantially less than the first and second substreams, positioning the first and second substreams on either side of the second stream, subsequently,

passing the first and second substreams and the second stream through an elongate slot-like extrusion orifice, the second stream being encapsulated within the first and second substreams in the composite stream, the second stream being generally coextensive with the resultant extruded sheet, the improvement which comprises restricting the flow of the first stream generally at the point where it is divided into the first and second substreams and introducing between the first and second substreams the second stream in a generally planar configuration generally parallel to the first and second substreams and having a dimension substantially less in width then the first and second substreams, and *passing the first and second substreams and the second stream to the extrusion orifice by means of a tapering configuration which converges toward the orifice.*

The processes envisioned by Donald as defined by such claim language can be gleaned from Donald patent Figs. 1 and 3, the latter being a sectional plan view in the direction 3–3 shown on the former.

Fig. 1

Fig. 3

The third claim upon which Corbett relies, claim 70, was copied from a patent to Squires[5] into the involved application on September 23, 1970. The relationship between the invention of Squires and the invention of Corbett was discussed at length in *Squires v. Corbett,* supra. For purposes of this case, Squires' copied patent claim is self-explanatory.

70. A process for the extrusion of multiple-layered sheeting of thermoplastic resin, said steps comprising the steps of

---

4. U.S. Patent No. 3,400,190 for "Method and Apparatus for the Extrusion of Multi-Layer Film and Sheet," issued to H. J. Donald on Sept. 3, 1968, and assigned to Chisholm's assignee, Dow Chemical Company.

5. U. S. Patent No. 3,476,627 for "Process for Coextruding Multiple-Layered Thermoplastic Sheeting," issued November 4, 1969, to P. H. Squires.

(a) joining in a tube, at least two laminar-flow streams of molten thermoplastic resin into a combined stream of molten thermoplastic resin which has a sharply defined juncture between the components of the combined stream,

(b) passing said combined stream of molten thermoplastic resin into a manifold of a sheeting extrusion die the juncture plane(s) between each of the individual molten thermoplastic resin components within the manifold being parallel to the principal direction of flow of the resin as it passes from the manifold and *takes on the shape of sheeting,* and

(c) whereby a multiple-layered sheeting wherein the individual layers of thermoplastic resin are of substantially uniform thickness over substantially all of the width of the sheeting is formed. [Emphasis ours.]

Finally, Corbett relies upon amended apparatus claim 64, said to be pending and allowed in Corbett's parent application since October 1, 1969.[6] Parent claim 64 is clearly directed to the sheet-extruding apparatus including a diverter element illustrated in Corbett Figs. 1 and 2 and reads (emphasis ours):

64. An apparatus for extruding laminated plastic products comprising an extrusion die defining a first passageway for fluid materials, said first passageway having a narrow, elongated discharge orifice, a first extruder, a second extruder, a first conduit having one end connected to said first extruder, a second conduit having one end connected to said second extruder, a flow dividing means comprising a solid diverter and two spaced channels, said diverter extending completely across said first passageway and having an internal passageway extending longitudinally therethrough, said channels each communicating at one end with said first passageway and at the other end with said first conduit, said diverter being positioned so as to direct fluid material from said first conduit into said channels, said internal passageway within said diverter communicating at one end with said second conduit and at its other end with a second longitudinal orifice situated intermediate and parallel to said channels, said second longitudinal orifice communicating with said first passageway at a point remote from said discharge orifice whereby fluid material from said first conduit is divided into streams which are laminarly joined within said first passageway to either side of a central stream of fluid from said second elongated orifice, said first passageway merging into an intermediate portion of reduced width which communicates directly with the elongated discharge orifice *whereby the laminated materials being extruded through said first passageway will be laminarly reduced in thickness and extended longitudinally prior to entering into said elongated discharge orifice.*

### The Board Opinion

The board, citing *Stalego v. Heymes,* 263 F.2d 334, 46 CCPA 772, 120 USPQ 473 (1959), characterized the issue as whether any of the groups of claims relied upon by Corbett includes all of the material limitations of Chisholm's patent claim 1. Considering claims 24–27 as a group, the board concluded, inter alia, that these claims did not recite squeezing step (b) of Chisholm claim 1 and that this limitation was material. In response to Corbett's argument that this step was inherently claimed, the board noted that, according to the method of claim 24, the streams could be reduced to their final thicknesses prior to joinder followed by movement along a divergent flow path without further thickness reduction.

As to claims 64–69, the board found no recitation of Chisholm's expanding step (c)

---

6. Corbett elected to prosecute apparatus claims in his parent application in response to the aforementioned restriction requirement.

which, likewise, was found to be a material limitation. Although the width of the middle stream in the process of claim 64 may be inherently laterally expanded, the board said, step (c) requires that *all* of the streams be expanded *after* joinder.

With respect to claim 70, the board conceded that steps (a) and (b) of Chisholm claim 1 were inherent in the method claimed but found no recitation of expanding step (c).

On reconsideration, the board held that parent claim 64 is an apparatus claim drawn to an invention different from that of Chisholm claim 1, notwithstanding the recognition of the conjoint squeezing and spreading of steps (b) and (c) in the last clause of the former.

Finding that none of the groups of claims relied upon by Corbett recite all of the material limitations of copied Chisholm patent claim 1, the board awarded priority to Chisholm on this ancillary ground without reaching the other issues.

*The Arguments*

Corbett's assignments of error are numerous and varied. With respect to claims 24–27, it is alleged that squeezing step (b) is inherently claimed as an incident of extrusion processes where laminar materials are expressed through a constructed shaping orifice. It is further alleged that the reduction in layer thickness prior to joinder hypothesized by the board is neither technically practical nor what happens in the Corbett process.

Corbett's primary contention, directed to all four groups of claims, is that the board, having conceded that every material limitation of Chisholm's patent claim 1 may be found, individually, in one or more of Corbett's claims, erred in not finding that the four groups of claims, *in combination*, satisfy the requirements of § 135(b). In this

regard, Corbett cites *Thompson v. Hamilton*, 152 F.2d 994, 33 CCPA 732, 68 USPQ 161 (1946).

The only other argument of substance raised by Corbett is an allegation that Dow Chemical Company, Chisholm's assignee, is estopped to assert an equitable claim for the benefit of § 135(b) due to alleged inequitable conduct during the prosecution of the Chisholm application.[7]

Chisholm's arguments generally restate the board's opinion and include an allegation that claims 24–27, having been cancelled before the Chisholm patent issued, were not pending during the "critical period" and, presumably, cannot be relied upon to avoid the § 135(b) bar. Chisholm also contends that the "combinations" of claims proposed by Corbett are irrelevant to the issue under § 135(b).

OPINION

The first question to be resolved is which of Corbett's groups of claims are to be reviewed for compliance with 35 U.S.C. § 135(b); more particularly, should claims 24–27 be considered in view of Chisholm's allegation that they were not presented during the "critical period." Both this question and Corbett's estoppel argument can be disposed of by an examination of the origins of 35 U.S.C. § 135(b).

Initially, the legal principles proscribing delayed copying of patent claims were embodied in an equitable doctrine akin to laches. In *Chapman v. Wintroath*, 252 U.S. 126, 40 S.Ct. 234, 64 L.Ed. 491 (1920), the Supreme Court articulated the proviso that laches could not be found prior to the expiration of the time period set in the statutory predecessor to 35 U.S.C. § 102(b)[8] for the establishment of the patent from which the claims were copied as a statutory bar, then two years. Consistent with its equitable nature, the doctrine was not applied in

7. Corbett alleges that Dow Chemical inequitably failed to call the pending Corbett application to the attention of the examiner of the Chisholm application after becoming aware of the availability of the former as a 35 U.S.C. § 102(g) prior art reference against the latter

during an interference between Donald (see note 4, supra) and Corbett.

8. R.S. 4886, as amended March 3, 1897, ch. 391, 29 Stat. 692.

cases where "special circumstances" justified the delay. *Jenks v. Knight*, 90 F.2d 654, 24 CCPA 1227, 33 USPQ 601 (1937). The situation where the copier had already been claiming substantially the same invention as the patentee was early recognized as such a special circumstance. *Chapman v. Beede*, 54 App.D.C. 209, 296 F. 956 (1924). The stated rationale for this exception was that the then Patent Office should declare an interference whenever copending applications claim substantially the same invention, and, if it fails to do so, the public interest is better served by a belated interference than by the issuance of a second patent.

In 1939, as part of a series of amendments to the patent laws changing, inter alia, most of the statutory time periods from two years to one year, R.S. 4903 was amended to add the following paragraph (ch. 452, § 1, 53 Stat. 1213 (1939)):

> No amendment *for the first time* presenting or asserting a claim which is the same as, or for substantially the same subject matter as, a claim of an issued patent may be made in any application unless such amendment is filed within one year from the date on which said patent was granted. [Emphasis added.]

Although the amendment restates the substance of the equitable doctrine of *Chapman v. Wintroath*, adjusted to reflect the new one-year statutory time bar, and provides for the exception recognized in *Chapman v. Beede*, the intent of Congress, as expressed in H.R.Rep.No.970, 76th Cong., 1st Sess. (1939), was clearly to enact a statute of repose. R.S. 4903, as amended, was to be a statute of limitations, so to speak, on interferences so that the patentee might be more secure in his property right.

In *Cryns v. Musher*, 161 F.2d 217, 34 CCPA 963, 73 USPQ 290 (1947), this court held that claims cancelled during the year *subsequent* to the issuance of the patent could be relied upon to avoid the R.S. 4903 bar in view of the words "for the first time." Thus, regardless of whether the cancellation of claims might have been rele-

vant to the application of the equitable doctrine of *Chapman v. Wintroath*, such cancellation was not relevant to the application of its statutory successor.

The second paragraph of R.S. 4903, as amended, was codified in its present form in 1952 as the second paragraph of § 135 (66 Stat. 801–02 (1952)), later designated paragraph (b) (76 Stat. 958 (1962)), supra. As this court noted in *In re Tanke*, 213 F.2d 551, 41 CCPA 919, 102 USPQ 83 (1954), no substantial change was intended by the changes in language. The words "prior to" in the present code clearly point to a "critical date" prior to which, following the reasoning of *Cryns*, the copier had to be claiming the invention, whether or not the claims were subsequently cancelled. We see no language in § 135(b), or any of its predecessor statutes, which requires the *Cryns* reasoning to be restricted to the cancellation of claims *after* the patent issued.

We conclude that the claims to be considered in this appeal are claims 24–27, even though cancelled prior to issuance of Chisholm's patent, claims 64–67, claim 70, and parent claim 64.

Our review of the history of § 135(b) also disposes of Corbett's estoppel argument. The amendment of R.S. 4903 and successor enactments converted what had been an equitable doctrine, applicable at the court's discretion, into a statutory requirement, like the statutory time bar of § 102(b), the application of which is mandatory. It follows that the quality of the patentee's conduct here is of no moment in determining the applicability of the § 135(b) bar, wherefore we need not consider the matter further.

Turning to a comparison of Chisholm patent claim 1 and claims 24–27, we agree with the conclusion of the board that these claims, even considered as a group, do not recite Chisholm's claimed squeezing step (b). Corbett does not seriously contend that this is not a material limitation, that is necessary to patentability,[9] and we agree with the board's conclusion in this regard.

9. *Wetmore v. Miller*, Cust. & Pat.App., 477 F.2d 960, 177 USPQ 699 (1973).

There being a material limitation of the copied claim not present in Corbett's claims 24–27, they cannot be said to be directed to substantially the same invention. *Stalego v. Heymes*, supra.

We cannot accept Corbett's contention that the squeezing limitation is "inherent." The inquiry here is not whether such a step is inherently *disclosed*, as it might be in a right-to-make case. Rather, the question is whether the step *necessarily* occurs in the process *as claimed*. *In re Schutte*, 244 F.2d 323, 44 CCPA 922, 113 USPQ 537 (1957). Conceding that the nature of the process claimed must be determined by reading the claims in light of the specification of which they are a part, as this court noted in *Schutte*, Corbett's disclosure says nothing about the *necessity* of a squeezing step. The board was clearly correct in concluding that such a step need not *necessarily* result from *all* modes of the method as claimed.

As to claims 64–69, we are of the opinion that the board correctly concluded that these claims are devoid of a recitation of Chisholm's claimed expanding step (c). Corbett, again, does not seriously contend that this limitation is immaterial and the board's conclusion to the contrary is, we believe, clearly correct. Claims 64–69, therefore, are not directed to substantially the same invention as Chisholm claim 1.

Claim 70 positively recites neither the squeezing step nor the expanding step, although the limitation "takes on the shape of sheeting" might inherently require squeezing. Even with this assumption, reliance upon claim 70 cannot be had to avoid the § 135(b) bar for the reasons stated with respect to claims 64–69—absence of expanding step (c).

Parent claim 64 defines, in functional terms, the elements of an apparatus which both squeezes and expands a laminar stream. Unfortunately for appellant, the claim also defines the apparatus of Corbett Figs. 1 and 2 with some particularity. More specifically, the claim defines the diverter element in detail. While we would agree that in some circumstances an apparatus and a method of using the apparatus may be so intertwined as to be essentially a single invention, see, e. g., *Leonard v. Everett*, 52 App.D.C. 90, 281 F. 594 (1922), this does not appear to be such a case. That apparatus materially different from Corbett's Figs. 1 and 2 could be employed to perform the method of Chisholm claim 1 is manifest from the disclosure of Chisholm wherein a manifold device replaces the diverter of Corbett parent claim 64. Parent claim 64 cannot be relied upon to avoid the § 135(b) bar to the copying of Chisholm's claim 1 because, in our opinion, the two claims are directed to patentably distinct inventions.

There remains appellant's contention that he should be entitled to rely upon all of the claims discussed above, in various combinations, to support his allegation of compliance with § 135(b). Appellant's cited authority, *Thompson v. Hamilton*, supra, seems to support his contention that he need not have earlier presented a *single* claim embodying every material limitation of the copied claim. As once suggested by Judge Learned Hand, in a somewhat different context, one does not claim a different invention by "amendments which go no further than to make express what would have been regarded as an equivalent of the original; or to incorporate into one claim what was to be gathered from the perusal of all, if read together." *Engineering Development Laboratories v. Radio Corporation of America*, 153 F.2d 523, 526, 68 USPQ 238, 242 (CA 2 1946) (quoted with approval by this court in *In re Tanke*, supra). This seems to have been the rationale of the *Thompson* case where the board and this court agreed that the five claims presented during the prosecution of the application there involved were, as a group, intended to secure a property right in subject matter substantially the same as that defined by the copied claims.

We believe, however, that there is a substantial difference between that which is to be gathered from the perusal of a group of related claims to the *same* invention and that which is to be gathered from the perusal of a group of claims to *related* inven-

tions. The more divergent the subject matter of the individual claims, the less likely it is that coverage of the interstices therebetween is realized. Appellant correctly contends that claims copied from issued U.S. patents should not, for purposes of this inquiry, be conclusively presumed to be directed to different inventions, but the fact remains that the particular claims copied from U.S. patents into the Corbett application, and the restricted apparatus claim in the parent application as well, are substantially divergent in scope and emphasis. In our opinion, a reading of all four groups of claims, together, does not manifest a unitary scheme or attempt to secure a property right in the subject matter defined by Chisholm's patent claim 1.

The decision of the board is *affirmed*.

*AFFIRMED.*