# United States Court of Appeals for the Federal Circuit

05-1374
(Interference No. 105,171)

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,

Appellant,

v.

UNIVERSITY OF IOWA RESEARCH FOUNDATION
and COLEY PHARMACEUTICAL GROUP, INC.,

Appellees,

and

THE UNITED STATES OF AMERICA
(as represented by the Department of Health and Human Services),

Appellee.

R. Danny Huntington, Bingham McCutchen LLP, of Washington, DC, argued for appellant. With him on the brief was Malcolm K. McGowan.

Lawrence M. Green, Wolf, Greenfield & Sacks, P.C., of Boston, Massachusetts, argued for appellees, University of Iowa Research Foundation, et al. With him on the brief were Edward R. Gates, John R. Van Amsterdam, and Laura Topper.

Erica A. Franklin, Attorney, Intellectual Property Section, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellee, The United States of America. With her on the notice of joinder were Peter D. Keisler, Assistant Attorney General, and John Fargo, Director. Of counsel was Susan L. C. Mitchell.

Appealed from: United States Patent and Trademark Office, Board of Patent Appeals and Interferences

# United States Court of Appeals for the Federal Circuit

05-1374
(Interference No. 105,171)

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,

Appellant,

v.

UNIVERSITY OF IOWA RESEARCH FOUNDATION
and COLEY PHARMACEUTICAL GROUP, INC.,

Appellees,

and

THE UNITED STATES OF AMERICA
(as represented by the Department of Health and Human Services),

Appellee.

_____

DECIDED:  July 17, 2006

_____

Before RADER, BRYSON, and LINN, <u>Circuit Judges</u>.

RADER, <u>Circuit Judge</u>.

The Board of Patent Appeals and Interferences (the Board) of the United States Patent and Trademark Office (the PTO) resolved this interference between the Regents of the University of California (California) as the senior party and the University of Iowa Research Foundation, Coley Pharmaceutical Group, Inc., and the United States (collectively, Iowa) as the junior party.  The Board granted Iowa's motion for judgment that 35 U.S.C. § 135(b)(1) barred California's sole claim interfering with Iowa's U.S. Patent No. 6,207,646 (the '646 patent).  <u>Univ. of Iowa Research Found. v. Regents of</u>

<u>The Univ. of Cal.</u>, Interf. No. 105,171 (Bd. Pat. App. & Interf. Mar. 10, 2005) (<u>Board Decision</u>).  Because the Board correctly construed section 135(b)(1), this court affirms.

I.

The '646 patent, entitled "Immunostimulatory Nucleic Acid Molecules," issued on March 27, 2001.  That patent claims compositions and their use to minimize allergic reactions.  Specifically, claim 3 of the '646 patent, the count in the interference, claims a "method of desensitizing a subject against the occurrence of an allergic reaction."  '646 patent, col. 61, ll. 51-52.  This method administers an allergen together with "an effective amount of an immunostimulatory nucleic acid."  <u>Id.</u> at col. 61, ll. 53-61.  Claim 3 of the '646 patent further recites the particulars of the nucleic acid used in the claimed method.

When the '646 patent issued, Application No. 09/265,191 (the '191 application), assigned to California, was pending before the PTO.  On October 31, 2001, seven months after Iowa's '646 patent issued, California added claims 202-204 to the '191 application.  Claims 202 and 203 recited immunostimulatory nucleic acid compositions, while claim 204 recited a method of treating an allergy in a vertebrate including the administration of an allergen together with an immunostimulatory nucleic acid.  With the addition of claims 202-204, California requested an interference with the '646 patent.  In that request, California proposed that the interference include two counts, one to the composition corresponding to claims 202 and 203, and the other to the method corresponding to claim 204.  In response to California's amendment, the PTO rejected claims 202-204.

California continued to prosecute the '191 application after the rejection of claims 202-204, participating in multiple examiner interviews and responding to multiple rejections. On May 9, 2002, more than one year after the '646 patent had issued, California added another method claim, claim 205, to the '191 application. After more prosecution, and another examiner interview, California canceled claims 202-204. The PTO then declared an interference between claim 205 of California's '191 application and Iowa's '646 patent. Claim 3 of the '646 patent became the sole count.

During the preliminary motions phase of the interference, Iowa filed a motion that claim 205 was not patentable to California under 35 U.S.C. § 135(b)(1). Board Decision, slip op. at 4. Under 37 C.F.R. § 41.125(a) (allowing the Board to take up motions for decision in any order), the Board opted to consider first the 35 U.S.C. § 135(b)(1) threshold issue. This issue, if decided in Iowa's favor, would deny California standing in the interference. Board Decision, slip op. at 22. In its decision, the Board found that California filed claim 205 more than one year after the '646 patent issued. Therefore, unless California could link that claim to claims filed within a year of the '646 issue date, section 135(b)(1) would bar claim 205 from the interference. Accordingly, the Board examined claim 205 for material differences from California's earlier claims. Board Decision, slip op. at 12 (citing In re Berger, 279 F.3d 975, 981-82 (Fed. Cir. 2002)).

The Board compared claim 205 with claims 202-203, Board Decision, slip op. at 14-16, and then with claim 204, id., slip op. at 16-20. The Board found that California's claim 205 contained material differences from claims 202-204. Therefore, claim 205 could not benefit from the earlier filing date of those claims. Id., slip op. at 16, 20.

Thus, the Board concluded that 35 U.S.C. § 135(b)(1) barred California's claim 205. Accordingly, the Board granted Iowa's motion for judgment on that basis. On appeal, California does not contest the Board's finding of material differences between claim 205 and claims 202-204. Instead, California challenges the Board's conclusion that the correct inquiry under § 135(b)(1) asks whether claims 202-204 contain material differences from claim 205 and not whether claims 202-204 are to the same invention as claims in the '646 patent.

II.

The Board's construction of 35 U.S.C. § 135(b)(1), the only question presented on appeal, is a question of law that this court reviews without deference. In re Berger, 279 F.3d 975, 980 (Fed. Cir. 2002). Section 135(b)(1) states:

> A claim which is the same as, or for the same or substantially the same subject matter as, a claim of an issued patent may not be made in any application unless such a claim is made prior to one year from the date on which the patent was granted.

35 U.S.C. § 135(b)(1) (2000). California argues that when it filed claims 202-204 within a year of the issuance of the '646 patent, it "discharged" its duty under section 135(b)(1). According to California, having already filed claims that satisfied section 135(b)(1), that section no longer bars any subsequent claim filed in the '191 application. Thus, California asserts that the proper 135(b)(1) test requires the Board to confine its analysis to pre-critical date claims, where the "critical date" is the date one year after the issuance of the patent relevant to the section 135(b)(1) analysis. Because California's proposed interpretation of section 135(b)(1) contravenes this court's precedent, the

plain meaning of the statute, and the policy underlying that section, this court rejects those contentions.

In <u>Berger</u>, relied on by the Board, this court applied section 135(b)(1) and explained its implications. In <u>Berger</u>, the appellant had copied a claim from the Muller patent more than one year after that patent had issued, amending his application to add the copied claim as new claim 7. 279 F.3d at 978. The Board affirmed the examiner's rejection of claim 7 under section 135(b).[1] The Board explained that the rejected claim contained material differences from claims 1-6, which were on file before the critical date. <u>Id.</u> at 980. On appeal, this court assessed the correctness of the Board's test to determine whether the earlier claims 1-6 supported claim 7. <u>Id.</u> at 981-82.

Following <u>Corbett v. Chisholm</u>, 568 F.2d 759 (CCPA 1977), this court explained that "[t]o establish entitlement to the earlier effective date of existing claims for purposes of the one-year bar of 35 U.S.C. § 135(b), a party <u>must show</u> that the later filed claim does not differ from an earlier claim in any 'material limitation.'" <u>Berger</u>, 279 F.3d at 981-82 (quoting <u>Corbett</u>, 568 F.2d at 765-66) (emphasis added). Thus, opinions like <u>Berger</u>, <u>Corbett</u>, and others, <u>see, e.g.</u>, <u>Cryns v. Musher</u>, 161 F.2d 217 (CCPA 1947), permit a party confronted with a section 135(b)(1) bar to show that claims filed after the critical date find support in claims filed before the critical date. If a party can show such

---

[1] In 1995, when the underlying patent application in <u>Berger</u> was pending before the PTO, 35 U.S.C. § 135(b) did not include paragraphs (1) and (2). In 1999, Congress amended section 135(b), designating the original paragraph (b) as paragraph (b)(1), and adding paragraph (b)(2). Consolidated Appropriations Act, 2000, Pub. L. No. 106-113, § 1000(a)(9), 113 Stat. 1501 (1999). Thus, the pre-1999 section 135(b) corresponds to the current section 135(b)(1). The difference between paragraphs (b)(1) and (b)(2) is that the former creates a one year bar relative to issued patents, while the latter creates a one year bar relative to published patent applications. Otherwise, the two paragraphs are the same.

support, section 135(b)(1) will not act as a bar.  Berger, 279 F.3d at 981-82.  Thus, California's position that the relationship between the post- and pre-critical date claims is not relevant to section 135(b)(1) contravenes the weight of precedent.  This court has already explained that such a relationship is not only relevant, but dispositive of the section 135(b)(1) question.  Id.

Moreover, this court does not perceive any legally significant distinctions between this case and that precedent.  For instance, California points out that when it filed claims 202-204 within a year of the '646 issuance it also requested an interference.  In Berger and Corbett, the record showed no such interference request before the critical date in the applications at issue.  That factual distinction has no legal significance.  Section 135(b)(1) does not include any language suggesting that a pre-critical date request for an interference makes any difference.  Section 135(b)(1) bars any claim having a degree of identity with a claim in an issued patent unless such a claim is filed before the critical date.  Thus, title 35 in this section does not demand notice of an impending interference, but instead prohibits unsupported, post-critical date identity.  California cannot satisfy section 135(b)(1) by supplying notice of an interference.  Instead, as this court's precedent explains, California must demonstrate that claims in the '191 application provide pre-critical date support for the post-critical date identity between claim 205 and the '646 patent.  That demonstration necessarily entails a comparison between pre- and post-critical date claims.  Finally, contrary to California's arguments, no language in Berger or Corbett suggests that the reason the court compared the pre- and post-critical date claims in those cases was merely because the record showed no request for interference within the critical time period.  In

short, the existence of a request for interference is not relevant to a proper section 135(b)(1) analysis.

Neither In re Frey, 182 F.2d 184 (CCPA 1950), nor Thompson v. Hamilton, 152 F.2d 994 (CCPA 1946), both relied on by California, disturbs the correctness of the approach in Berger. Without any detailed statutory analysis, Frey stated broadly: "[A]n applicant for patent—if he had claims within the critical period to the same or substantially the same subject matter as appears in a patent . . . is not barred from copying claims from the patent [after the critical date.]" 182 F.2d at 185. As is apparent from that quote, Frey dealt with the situation where the applicant added claims copied from a patent. Thus, the claims added after the critical date in Frey were to the same subject matter as the claims in the earlier issued patent. Likewise, in Thompson, the issue confronting the court was the difference between "the counts" and the pre-critical date claims. 152 F.2d at 997. As in Frey, the claims at issue in Thompson were copied from the patent. See id. at 995. Thus, because both cases included post-critical date claims that were the same as the patented claims, neither opinion is relevant to the distinction between comparing pre- and post-critical date claims with one another and comparing pre-critical date claims with the patented claims.

Like this court's precedent, the language of section 135(b)(1) does not support California's proposed construction. California's construction would convert section 135(b)(1) into a statute of limitations that could be tolled by a single pre-critical date claim. In essence, California contends that the phrase "such a claim" in section 135(b)(1) means any earlier claim that might have given notice of an interference had the PTO declared such an interference. To the contrary, the statutory term "such a

claim" refers to the claim that the potentially interfering party seeks to add, which is directed to the same or substantially the same subject matter as that claimed in a patent, regardless of whether that party earlier filed a different claim having the required identity with a patented claim. The statute requires "such a claim" to come before the critical date. Thus, section 135(b)(1) does not refer to some unrelated claim made earlier in prosecution even if accompanied by a request for interference. The language of the statute, "[a] claim . . . may not be made . . . unless such a claim is made prior to . . . ," necessarily requires that in the event a party seeks to add any claim sharing identity with a patented claim, "such a claim" must appear before the critical date. When a party seeks to add a new claim, or to amend an existing claim, beyond the critical date for section 135(b)(1), this court applies the material differences test discussed in opinions like Berger to determine if "such a claim" is barred. California's position that any claim filed within the critical time period supports, for section 135(b)(1) purposes, any later added claims, regardless of the relationship between the pre- and post-critical date claims, is simply not consistent with the language of the statute.

The policy underlying section 135(b)(1) also supports the Board's construction of that section. This court and its predecessors have described section 135(b)(1) as a statute of repose, placing a time limit on a patentee's exposure to an interference proceeding. See, e.g., Corbett, 568 F.2d at 765 (explaining that Congressional intent behind the predecessor to section 135(b)(1), i.e., R.S. 4903, "was clearly to enact a statute of repose . . . so that the patentee might be more secure in his property right"); Berman v. Housey, 291 F.3d 1345, 1351 (Fed. Cir. 2002) (quoting Corbett). This general explanation, however, does not mean that a patent applicant can "discharge" its

obligation under section 135(b)(1) for all future claims by filing any claim that once complies with that section. Contrary to California's arguments, section 135(b)(1) is not a simple "notice statute" informing patentees about potential interference proceedings. In fact, no notice at all is provided to the patentee by operation of section 135(b)(1) itself. Rather, in order to serve as a statute of repose, section 135(b)(1) operates in conjunction with the PTO's duty to declare interferences. The filing of an interfering claim and the subsequent declaration of an interference have a cause-and-effect relationship. By limiting the time period for filing a potentially interfering claim, section 135(b)(1) limits the patentee's vulnerability to a declaration of an interference only because it limits the window of time in which the cause of the interference can occur. The PTO should declare a valid interference upon receipt of a claim that satisfies section 135(b)(1), and which is otherwise patentable.

Despite the expected cause-and-effect relationship between the filing of an interfering claim and the declaration of an interference, this court's predecessor observed that the PTO sometimes fails to declare an interference where one exists. As Corbett explains, "[the PTO] should declare an interference whenever copending applications claim substantially the same invention, and, if it fails to do so, the public interest is better served by a belated interference than by the issuance of a second patent." 568 F.2d at 765. In other words, while an interference based on a post-critical date claim is not desirable, where such an interference is merely belated, meaning the same interference should have been earlier declared by the PTO, the interference should not be barred by operation of section 135(b)(1). Thus, the limited exception to the one year bar, provided by the "such a claim" language in section 135(b)(1), allows

for belated interferences.  Beyond such belated interferences, California's construction of section 135(b)(1) would permit different interferences because that construction removes from section 135(b)(1) any requirement for a nexus between the pre- and post-critical date claims.

Finally, California suggests that the Board's construction of section 135(b)(1) is unfair to applicants who attempt to comply with that section only to have their claims rejected during ex parte examination more than a year after the issuance of the patent with which they are seeking an interference.  According to California, this result unfairly denies an applicant access to an interference just because, for example, the pre-critical date claims added to provoke the interference lacked written description support, and hence were rejected by the PTO.  To the contrary, this court perceives no inequity in a construction of section 135(b)(1) that might, in some circumstances, prevent a patent applicant from relying on the filing date of a claim to which it was not statutorily entitled.

## CONCLUSION

Because the Board properly construed 35 U.S.C. § 135(b)(1), this court affirms.

## COSTS

Each party shall bear its own costs.

## AFFIRMED