54 CCPA

**Milton Oscar SCHUR and James C. Rickards, Appellants,**

**v.**

**Paul Adolf MULLER, Appellee.**

**Patent Appeal No. 7735.**

United States Court of Customs and Patent Appeals.

Feb. 16, 1967.

Rehearing Denied April 6, 1967.

Robert H. Bachman, New Haven, Conn., Eugene L. Bernard, Washington, D. C. (Edward J. Mahler, Washington, D. C., of counsel), for appellants.

David E. Varner, Washington, D. C., for appellee.

Before WORLEY, Chief Judge, RICH, SMITH and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.[*]

ALMOND, Judge.

Schur and Rickards (hereinafter Schur) appeal from the decision of the Board of Patent Interferences awarding priority of invention to Paul Adolf Muller (hereinafter Muller).

The interference involves the application[1] of Schur and the Muller patent[2] granted on an application claiming priority of a Swiss application filed August 4, 1953.

The Schur application was filed as a continuation-in-part of their application serial No. 400,072, filed December 23, 1953, which issued as U. S. Patent No. 2,999,503 on September 12, 1961.

The invention in issue relates to a filtering means, particularly cigarette filters, made of paper which has been mechanically perforated in a particular manner to improve its filtering properties. The invention is defined in nine counts which are claims 1–7, 9 and 10 of the patent to Muller, copied by Schur to establish the basis for the interference.

Counts 1 and 3 are representative and read:

1. Filtering means for tobacco smoke and like gaseous medium; comprising at least two adjacent layers of fibrous material having surfaces provided with a plurality of spaced openings defined by open bases and projections extending from said open bases and beyond said surfaces of the respective layers, said projections of said layers being directed toward each other and spacing the surfaces one from the other, said projections being made of said fibrous material and terminating in irregularly shaped frayed ends, whereby the projections of one layer may interlace with the projections of the other layer, to thereby provide a tortuous path for said medium between said layers and to thereby enhance the filtering action when said medium streams between said layers and along said surfaces of the latter.

3. Filtering means for a gaseous medium; comprising a strip of material consisting of a plurality of adjacent layers made of the same fibrous material, each layer being provided with a plurality of spaced apart openings passing through the surfaces of said layers, and projections made of said material and extending from said openings and spacing opposite surfaces of adjacent layers and terminating in irregularly shaped, frayed and fibrous ends, whereby the projections of one layer may interlace with the projections of the adjacent layer, thereby contributing to the enhancement of the filtering action by thus providing a tortuous path for the medium between said layers and along said surfaces of the latter.

We think it conducive to better understanding of the invention in issue to make reference to the disclosures of both parties.

The Muller patent describes the filtering means as follows:

The * * * invention relates to a filtering material suitable for all kinds of filters, such as air, dust, smoke and liquid filters. The invention is characterized by the employ-

---

[*] Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

[1] Serial No. 460,355, filed October 5, 1954, assigned to Olin Mathieson Chemical Corporation.

[2] Patent No. 2,847,086, issued August 12, 1958 on application serial No. 447,478, filed August 3, 1954.

ment of a basic material formed by at least one perforated fibre pad (basic pad). This * * * pad may be of paper of various kinds, such as crepe paper. * * *

The * * * pad may be readily developed into an efficient filtering material in two fundamentally different ways. The * * * pad itself may be formed in a suitable man-ner so that the filtering action is particularly high, in that portions of the pad material displaced by *perforating* the material adhere to the * * * pad, these portions and/or the marginal zones of the *perforations* being preferably frayed to a greater or lesser degree. [Emphasis supplied.]

Muller's figures 1, 2 and 3 illustrate the details of the *perforated* paper:

Fig. 2        Fig. 1        Fig. 3

Muller states:

In Fig. 1–3 *g* is a fragmentary section of a *perforated* * * * pad formed of fibrous material, such as crepe paper having the *perforations c.* In all three embodiments the portions *t* displaced by and during *perforation c* adhere to the * * * pad. In * * * Fig. 1 the portion *t* has smooth edges, i. e., they are not frayed. In * * * Figs. 2 and 3 the edges are frayed * * *. If it is desired to fray the fibres at the edges of the *perforations* and the displaced por-tions *t* to a considerable extent, a material should be chosen which frays to a large extent on tearing, e. g., a material similar to blotting paper. * * * [Emphasis supplied.]

It is noted that portions *t* extend *out of the plane* of the paper *g*. Muller *perforates* by a roller having prongs which perforate the paper with a tearing action.

The Muller filter is made by employing several layers of perforated paper as disclosed in Fig. 6 reproduced below:

Fig 6

The application describes Fig. 6 as follows:

* * * Fig. 6 shows a section through an embodiment of a filtering material composed of a multi layer filter body with several pads *g*, e. g., three superposed layer-pads being formed of the basic material accord-ing to Fig. 2 which achieve a rela-tively good filtering action by virtue of the action of the more or less interlaced portions or frayed projections *t* * * *.

In his brief counsel for Muller stresses the fact that:

* * * the projections *t* formed by *perforating* the paper extend *out of*

*the planes* of their respective layers of paper. Moreover, the projections *t* are directed toward an adjacent layer, and also space the layers apart to provide passageways or channels therebetween through which a gaseous medium to be filtered may stream.

Turning now to the Schur application, it discloses the perforating of paper, which may be crepe paper, by passing it between a rubber covered roll 20 and a still roll 21 having frusto-conical or pyramidal shaped teeth 22, as shown in figures 3, 5 and 6 reproduced below:

These rolls [20, 21] are forced together under sufficient pressure to force the teeth 22 of roll 21 through paper 1 to form a plurality of *rents* 23 therein of the general type illustrated in Figure 9. \* \* \* [Emphasis supplied.]

Figure 9 is depicted as follows:

The effect which the perforating rolls produce is described by Schur as follows:

\* \* \* the teeth are frusto-conical shaped but teeth of other shapes having a dull point such that the paper is *torn* and *not cut* can be utilized. \* \* \* Sharp edges have a tendency to form clean cut paper edges rather than *to tear the paper or pull the fibers apart, which is necessary in practicing this invention.* [Emphasis supplied.]

We deem it pertinent to point out here that Schur relied only on the showing of figure 9, which illustrates paper perforated by the means shown in figures 3, 5 and 6 of appellants' application, as support for the *perforated* and *out-of-plane* projection feature of the invention.

In copying claims from the Muller patent and applying same to the Schur disclosure, appellants stated:

"Spaced openings," as defined [count 1] are shown in Figure 9 and are described in the spec \* \* \*.

It is noted, however, that count 1 states that the "spaced openings" in "adjacent layers of fibrous material" are:

\* \* \* defined by open bases and projections extending from said open bases and beyond said surfaces of the respective layers.

We think the board fairly and succinctly analyzed the counts in issue. Referring to count 1, that analysis of the requirements of the count follows:

a. That the filtering means comprise at least two adjacent layers of fibrous material.

b. That the material surfaces have a plurality of spaced apart openings.

c. That projections extend from the spaced openings.

d. That the projections extend toward each other.

e. That the projections space the layers one from the other.

f. That the projections terminate in irregularly shaped frayed ends.

g. That as a consequence of (e) and (f) the projections may interlace to form a tortuous path for the gaseous medium.

Anent this analysis, count 3 is limited to each of features (a), (b), (c), (f)

and (g). Count 3 provides that the projections of one layer may interlace with those of the adjacent layer and is thus also limited to feature (d). The remaining counts are also limited to projections extending oppositely toward each other from adjacent layers and interengaged to facilitate filtering action. All of the counts except 8 and 9 are limited specifically to projections having irregularly shaped frayed ends. Counts 8 and 9 are limited to layers having fibrous wall portions interengaged.

■■■ As hereinabove noted, Muller filed the necessary priority documents in claiming the benefit of the filing date of his Swiss application of August 4, 1953. There is no issue as to this aspect of the case; and, having taken no testimony to prove an earlier date, Muller is entitled and restricted to an invention date of August 4, 1953. Only Schur took testimony and, as junior party, he bears the burden of proving by a preponderance of the evidence his right to an award of priority over Muller.

Analysis of the allegations of the parties' preliminary statements produces the following tabulation:

|  | Schur (Junior party) | Muller (Senior party) |
|---|---|---|
| First written description | May 28, 1953 | |
| First drawing | August 14, 1593 | |
| Disclosure to others | May 28, 1953 | |
| Actual reduction to practice | May 29, 1953 | |
| Diligence from | May 28, 1953 | |
| Actual filing date | October 5, 1954 | August 3, 1954 |
| Earlier application date claimed | December 23, 1953 (S.N. 400,072) | August 4, 1953 (Swiss) |

■■■ Schur therefore must carry the burden of proving either that he actually reduced the invention to practice prior to August 4, 1953, or that he conceived

it before that date and was diligent from a time just before that date until his own later reduction to practice.

■ We have considered appellants' argument that the board adopted an unduly narrow and literal interpretation of the counts by express reference to limited portions of the Muller disclosure. The record affords no support for this contention. There is no suggestion, express or implied, that support for the counts is not found in the Schur application disclosure. It is apparent from the record that the board merely applied the general principle that activity alleged to supply proof of either conception or actual reduction to practice of an invention defined in a given count must include *all* of the limitations of the count, since each express limitation is considered material and cannot be disregarded.

Appellants' dilemma resides in the fact that the proofs submitted, relating to alleged conception or reduction to practice prior to Muller's record date, fail to disclose paper which has been *perforated* in the manner taught by the disclosures of *both* parties, so that when made into a filter it would meet all of the express limitations of the counts.

Appellants rely on exhibits 12, 18, and 89 and testimony pertaining thereto to prove the making of filters of "Kimpak" crepe wadding. Appellants' witness Jollif describes "Kimpak" as a packing material of multi-layered paper. He stated that the paper is very open with each layer having a number of holes but *"the fibers are essentially on a single plane."* (Emphasis added.) "Kimpak," however, is not perforated so as to provide spaced openings with projections extending out of the plane of the paper and terminating in irregularly shaped frayed ends, as required by the counts. In this connection the board properly found that:

* * * Schur argues that tests made with filters formed from Kimpak, Kleenex, Golden Fleece, etc., in July 1953 constituted reductions to practice. We do not agree with that contention. The fact that these materials had open porous structures cannot be cited as proof of reduction to practice, or even of conception, of a filter with projections directed toward each other and spacing the layers apart, of termination of the projections in irregularly shaped, frayed ends, or in the "interlace" relationship (count 1), or of the "struck out" nature of the projections (count 2), or of the related features of the other counts.

■ Our review of the testimony adduced, the numerous exhibits, and consideration of the arguments of counsel and the authorities cited fail to persuade us of reversible error in the decision of the board awarding priority of invention to Muller, the senior party.

We agree with the statement of the board that:

We have carefully reviewed Schur's record and the briefs of the parties in relation to these issues and have been unable to find in the testimony of Schur or Rickards, or of any of their corroborating witnesses, any proof that an invention containing all of the limitations of any one of the courts was reduced to practice prior to Muller's record date of August 4, 1953, or even that they were in joint possession of such a conception prior to that date. * * *

The decision of the board is accordingly affirmed.

Affirmed.

SMITH, J., concurs in the result.